THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RUIZ-DUCLOS,<br><br>**Plaintiff,**<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>**Defendant.** | **CIVIL NO.** 12-1321(JAG) |

**OPINION AND ORDER**

GARCÍA-GREGORY, D.J.

Pending before the Court is the United States Government's (the "Government") Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(1). (Docket No. 6). Plaintiff Maritza Ruiz-Duclos ("Ruiz" or "Plaintiff") timely filed her opposition. (Docket No. 10). For the reasons that follow, the Government's motion is hereby GRANTED.[1]

**BACKGROUND**

The morning of October 16, 2008, Rafael Correa ("Correa") crashed his vehicle against Plaintiff's while she was crossing an intersection in San Juan. (See Docket No. 1 at ¶¶ 8-9; see

---

[1] The Government is hereby ORDERED to file certified translations of all documents submitted in the Spanish language (e.g., the state court complaint) within 30 days of the entry of this Opinion.

also Docket No. 6 at p. 1). Correa, the Chief Ranger at the National Parks Service's San Juan Historical Site, was driving his government-issued vehicle at the time of the incident. The police report lists the federal government as the owner of the vehicle, and also indicates that Correa is an employee of the National Parks Service, which is an agency of the U.S. Department of the Interior (the "DOI"). (Docket No. 6-1).

On March 4, 2009, Plaintiff filed a tort action against Correa in state court alleging damages arising from the collision. (Docket No. 2). The complaint was personally served on Correa at his workplace. (See Docket Nos. 6-1 & 6-2). Plaintiff was, at the time, represented by attorney Quiñones, a different attorney than the one currently representing her in this case.[2] (Id.). According to Plaintiff, neither Correa nor the Government answered the complaint.

What follows is not exactly clear, but it is a central part of Plaintiff's argument, so the Court will reproduce the text as presented in her opposition:

> By March 2010, attorney Quiñones had obtained a judgment against an employee of the United States of America in the local court. Because of this, counsel Fratallone and [attorney Segarra] were in conversations to remove that case from the local court and settle the matter. At that time, [attorney

---

[2] Both, however, are from the Quinones-Lopez Law Office.

> Segarra] discussed this case with counsel Fratallone and informed him that attorney Quiñones had filed the matter in local Court.[3] Counsel Fratallone advised me to provide him with the full documents of the case and to address the administrative request to him and that he would handle it.[4]

(Docket No. 9 at ¶ 4).

On March 17, 2010, attorney Fratallone received Plaintiff's claim form and all documentation relevant to her case. At some point in October 2010, Plaintiff does not say exactly when, attorney Fratallone informed Plaintiff's counsel that he "could not handle the case" and that he should file it with the DOI. (Id. at ¶ 5). Accordingly, Plaintiff's counsel sent the required form to the DOI via certified mail. The envelope was received and signed by S. Long on October 21, 2010. (Docket No. 6-4, p. 4).

---

[3] Plaintiff states that she was "engaged in litigation against the U.S. government" and that "Counsel Fratallone was lead counsel for the U.S. Government in that case…." (Docket No. 9, p. 4). The Court is not entirely sure what case Plaintiff is referring to, as the United States was not a named defendant in the state court case. However, in a letter addressed to the DOI's staff attorney, Plaintiff's counsel states that "a State Claim was file and dismiss without prejudice." (Docket No. 6-4 at p.1, copied *verbatim*). The most reasonable inference is that two separate cases were filed: one against Correa, in which a default judgment was obtained, and the other against the United States, which was dismissed without prejudice.

[4] The Court notes that there is no evidence (e.g. correspondence or a sworn statement by attorney Fratallone) that this conversation ever took place. Nevertheless, by making this statement, counsel for Plaintiff "certifies that to the best of [his] knowledge […], the factual contentions [made in his motion] have evidentiary support." See Fed. R. Civ. P. 11(b).

Plaintiff's claim form was ultimately reviewed by the staff attorney of the Department of the Interior. (See Docket No. 6-3). On January 24, 2011, the DOI sent a letter informing Plaintiff of several deficiencies regarding her claim. "Contrary to the instructions printed on the back of the claim form," Plaintiff did not submit any competent evidence to support the amounts claimed. (Id. at p. 1). Thus, the DOI asked Plaintiff to submit competent evidence that would sustain her claim, as well as evidence that her claim was timely filed before the DOI. Plaintiff was also asked to provide written authorization for Quiñones-Lopez Law Office to act as her representative for these proceedings. (Id.). On March 14, 2011, the DOI sent Plaintiff another letter, again asking her for competent evidence relating to her claim. All letters sent by the DOI to Plaintiff were also copied to Quiñones-Lopez Law Offices. (See Docket No. 6-3).

On April 21, 2011, the DOI sent one last letter, this time addressed at Plaintiff's legal representation. (Id.). It warned that if the required evidence was not presented by June 3, 2011, the DOI would consider Plaintiff was not interested in pursuing her case, and the file would be closed. (Id. at p. 6).

By letter dated June 3, 2011, Plaintiff's counsel informed the DOI that Plaintiff's claim had in fact been sent to attorney Fratallone, counsel for Fort Buchanan, which was the entity

Plaintiff believed at the time was responsible for the damages she claimed.[5] (Docket No. 6-4, p.1). Plaintiff's counsel also explained that attorney Fratallone had told them in October that they needed to notify the Department of the Interior. Enclosed with the letter was the following:

1. an undated tort claim which listed "GSA Fleet Management or United States Army" in the "Appropriate Federal Agency" block;
2. an envelope addressed to "Installation Legal Office, A'TTN: Claims Attorney, 214 Brooke Street', Fort Buchanan, PR 00934-4206" with a certified mail sticker and an unsigned return receipt;
3. the undated claim form sent to the DOI;
4. a return receipt evidencing "S. Long" signed the return receipt on October 21, 2010; and,
5. several pages of medical documents.

(Docket No. 6, p.3; see also Docket Nos. 6-4 and 6-5).[6]

By letter dated November 10, 2011, the DOI informed Plaintiff her claim had been rejected on timeliness grounds. On May 10, 2012, Plaintiff filed the instant complaint.

---

[5] Plaintiff does not explain the basis for this belief. Even before filing the state court complaint, Plaintiff knew or should have known the correct agency was the Department of the Interior.

[6] The evidence submitted by the Government does not include the medical documentation. However, the letter reflects that Plaintiff "[included] additional medical records" as attachments. (Docket No. 6-4, p. 1).

**STANDARD OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). "This rule is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction. Some challenges - those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction are good examples." Id. at 362-363. Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002).

As courts of limited jurisdiction, federal courts have the duty of narrowly construing jurisdictional grants. See, e.g., Alicea-Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R. 1998). Because federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); see also Droz Serrano v. Caribbean Records Inc., 270 F.Supp.2d 217 (D.P.R. 2003). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence

has been submitted." See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

## DISCUSSION

Timeliness

The Federal Tort Claims Act strictly bars any tort claim filed against the United States unless the same "is presented in writing to the appropriate Federal Agency within two years after such claim accrues…." 28 U.S.C. § 2401(b). "[T]his limitations provision, ensuring that the government is promptly presented with a claim while the evidence is still fresh, is to be strictly construed in the government's favor." Patterson v. U.S., 451 F.3d 268, 270 (1st Cir. 2006)(citing United States v. Kubrick, 444 U.S. 111, 117-18 (1979)). Moreover, the requirement "is a jurisdictional prerequisite to suit that cannot be waived." See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)(citing Coska v. United States, 114 F.3d 319, 323 n.8 (1st Cir. 1997)). The burden thus lies on Plaintiff to prove her claim was timely filed. See Sanchez v. U.S., 134 F.Supp.2d 211 (D.P.R. 2001). Failure to meet the deadline requires the dismissal of the complaint.

The date of the crash, October 16, 2008, is our starting point in this analysis. From there, Plaintiff had two years to

submit her claim in writing to the Department of the Interior. Unfortunately, the *only* (and earliest) proof of receipt by that agency is dated October 21, 2010. The record thus shows that Plaintiff's FTCA complaint was submitted five days too late.

Plaintiff asserts, however, that she sent the required form by certified mail on October 14, 2010; that is, two days before the deadline. (Docket No. 9 at ¶ 11). While the evidence does reflect Plaintiff sent something to the DOI, it does not show *when* it was sent. In the end, that same evidence shows that the documents sent by Plaintiff were received by the agency on October 21, 2010. See Drazan v. United States, 762 F.2d 56, 58 (7th Cir. 1985) ("Mailing is not presenting; there must be receipt"); see also Bailey v. United States, 642 F.2d 344 (9th Cir. 1981) ("Nor do we accept appellants' invitation to rewrite the Act and in effect repeal the regulation by holding that mailing alone is sufficient to meet the requirement that a claim be 'presented'"). Thus, the Court is forced to conclude that the claim was not adequately presented to the DOI within the two-year statute of limitations.

Equitable Tolling

As it stands, Plaintiff's claim is time barred. Nevertheless, she contends that the circumstances surrounding

her belated filing are sufficient to toll the statute of limitations in her favor. The Court disagrees.

In spite of the jurisdictional nature of § 2401(b), the First Circuit has held that the doctrine of equitable tolling is available in FTCA cases. See Rakes v. U.S., 442 F.3d 7 (1st Cir. 2006)(holding that FTCA statute of limitations may be tolled by equitable means). Courts consider five factors when evaluating the applicability of this doctrine to a particular case. See Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752 (1st Cir. 1988); see also Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 48 (1st Cir. 2005). The factors are: "(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." Kale, 861 F.2d at 752-53 (citing cases from other jurisdictions); see also Mercado, 410 F.3d at 48. Equitable tolling is applied "only sparingly," Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990), and the burden of persuasion falls on the party seeking its application. See e.g. I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc., 182 F.3d 51, 54 (1st Cir. 1999).

The Court finds that Plaintiff has failed to satisfy the five-factor test outlined above. Kale, 861 F.2d at 752-53. To start with, constructive knowledge of all statutory rights and requirements "is 'attributed' to an employee in situations where he has retained an attorney." Id. at 753 (citing Edwards v. Kaiser Aluminum & Chem. Sales, Inc., 515 F.2d 1195, 1200 n. 8 (5th Cir. 1975)); see also Mercado, 410 F.3d at 49. Here, the record shows that Plaintiff retained counsel before commencing the state court case, and was also represented by counsel throughout the course of these proceedings. Therefore, at the very least, Plaintiff had constructive knowledge of her rights under the FTCA and of its filing requirements.

Plaintiff affirms she had the "intention" to timely file her claim. But intention alone is not enough. In order for her to be entitled to equitable tolling, she must show that along with intention came some reasonable degree of diligence. Plaintiff knew from the outset that the "appropriate federal agency" was the DOI, not Fort Buchanan. Though attorney Fratallone made representations to Plaintiff's counsel that he would "deal with it," the fact remains that Plaintiff knowingly submitted the claim to the wrong agency.

What really seals the deal is that Plaintiff *never followed up* on the status of her claim. There is no evidence Plaintiff

ever asked attorney Fratallone whether the claim was submitted or not. It was not until six months later that attorney Fratallone informed Plaintiff of his inability to submit the claim on her behalf. Because Plaintiff sat on her hands and did not exercise a reasonable amount of diligence in ensuring that her claim was properly presented before the DOI during those six months, equitable tolling is unwarranted.

Rather than owning up to her lack of diligence, Plaintiff cites 28 C.F.R. § 14.2(b)(1) in an attempt to offload her fault on attorney Frattalone and Fort Buchanan. 28 C.F.R. § 14.2(b)(1) provides, *inter alia*, that:

> A claim shall be presented to the Federal agency whose activities gave rise to the claim. When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant.

Plaintiff argues that, having (knowingly) presented her claim to the wrong agency, that agency was obligated to transfer the claim to the appropriate agency. But, as noted above, the timeliness requirement is strictly construed in favor of the Government. So once again, in order to avail herself of § 14.2(b)(1), Plaintiff needed to exercise some reasonable

diligence in ensuring that the agency transferred her claim to the DOI.[7] Instead, she did nothing.

Even if Plaintiff is correct that § 14.2(b)(1) requires no action on her part, the fact remains that by Plaintiff's own admission, attorney Fratallone notified her that she needed to submit her claim to the DOI before the deadline. Plaintiff claims she sent the package on October 14, 2010. If this is true, she could have ensured its arrival by sending it overnight and with delivery confirmation. But no evidence reflects it ever arrived at the DOI prior to October 21, 2010. And equitable tolling is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his [or her] hands." Kelley v. NLRB, 79 F.3d 1238, 1248 (1st Cir. 1996).

Finally, Plaintiff argues that the delay in this case is minimal, and will not result in any prejudice towards the United States. Nevertheless, this argument is foreclosed because the Court has not found any of the other factors in Kale apply. See Kale, 861 F.2d at 753 (citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152 (1984)(absence of prejudice factor is

---

[7] The Court notes the situation at hand is different from that in which a government agency employs some trickery to fool a claimant into missing a deadline. See Irwin, 498 U.S. at 96 (citing as an example Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231 (1959)(adversary's misrepresentation caused plaintiff to let filing period lapse)). Plaintiff characterizes attorney Fratallone's actions as an honest mistake. The record gives us no reason to assume otherwise.

Case 3:12-cv-01321-JAG   Document 12   Filed 03/28/13   Page 13 of 13
**CIVIL NO.** 12-1321 (JAG)                                            13

not an independent basis for invoking equitable tolling, but should apply only after another factor is identified that might justify tolling)).

## CONCLUSION

The Court finds that Plaintiff did not exercise reasonable diligence in ensuring that her FTCA claim reached the "appropriate federal agency" by the statutory cutoff date. Accordingly, since no equitable tolling applies, Plaintiff's FTCA claim is time barred and shall therefore be dismissed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of March, 2013.

S/ Jay A. García-Gregory
JAY A. GARCÍA-GREGORY
United States District Judge